UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------X

VALERIE D. CASTELLANO,

                   Plaintiff,

      - against -

MICHAEL J. ASTRUE,
Commissioner of
Social Security

                 Defendant.

--------------------------------X

**MEMORANDUM AND ORDER**

07 Civ. 4608 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/30/08

      Valerie D. Castellano ("Castellano") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), challenging the final decision of the Commissioner of Social Security ("Commissioner") to deny her application for disability insurance benefits. The parties filed cross motions for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). For the reasons stated below, the parties' motions are DENIED and the matter is remanded to the Commissioner for further proceedings consistent with this opinion.



## PROCEDURAL HISTORY[1]

On February 11, 2005, Castellano filed an application for Social Security Disability Insurance ("SSDI") benefits in which she alleged disability due to the "extreme fatigue and acute pain" caused by her chronic pancreatitis. (Tr. 51-53, 62-63, 110.) The application was denied in May (Tr. 47-50) and Castellano requested a hearing before an administrative law judge ("ALJ") (Tr. 36, 45). The administrative hearing was held on November 1, 2006 before ALJ Katherine Edgell. (Tr. 21-25.) On November 21, ALJ Edgell issued a decision concluding that Castellano was not disabled under the Act. (Tr. 11-20.) While the ALJ found that Castellano had several medically determinable "severe impairments" (Tr. 18), she was nonetheless deemed capable of performing her past relevant work (Tr. 19). The ALJ's decision became final when the Appeals Council denied Castellano's request for review on March 27, 2007. (Tr. 5-8.) This action followed.[2]

---

[1] The following facts are drawn from Plaintiff's Complaint ("Compl."), Plaintiff's Memorandum of Law ("Pl. Mem."), Defendant's Response and Reply Memorandum ("Def. Resp.") and the administrative transcript filed with Defendant's answer as required by 42 U.S.C. § 405(g) ("Tr.").

[2] The complaint alleges "ongoing disability" since March 15, 2003. (Compl. 1-2.) However, an SSDI claim remains in effect only until an ALJ's decision is issued. 20 C.F.R. § 404.620(a). Our review is therefore limited to the ALJ's determination that Castellano was not disabled between March 15, 2003, the alleged onset date, and November 21, 2006, the date of decision. Nothing precludes Castellano from reapplying for benefits in the future, if she remains covered, on the ground that she is or has become disabled since the decision date. See id.

## BACKGROUND

Castellano, a United States citizen and resident of White Plains, was forty-seven years old at the time of her November 2006 hearing. (Tr. 16, 53.) Her medical record reveals a well-documented history of pancreatitis, gastroesophageal reflux and Crohn's disease. (Tr. 220-29, 237-39, 243-62, 297-308.) Throughout the forty-four months between the onset of her alleged disability and the ALJ's decision, Castellano consistently and continually reported fatigue (see Tr. 62-63, 76, 147, 150, 152, 155, 210) and both chronic and episodic pain in her abdomen and lower back (see Tr. 62-63, 76, 96, 147, 150, 152, 154-55, 197-98, 210, 219, 226, 240, 242, 286-93).

We first review the medical evidence in the record, including evidence regarding Castellano's reported pain, and then turn to the non-medical evidence before the ALJ.

### A. Medical Evidence

Castellano was initially diagnosed with Crohn's disease in 2003 by her primary care physician, Dr. Owen J. O'Neill. (Tr. 247-50.) At a follow up examination, Dr. O'Neill opined that Castellano was also suffering from some form of pancreatic disorder. (Tr. 243-46.) Castellano was thereafter referred to Dr. Charles Noyer, a gastroenterologist who noted a history of "traumatic injury to [Plaintiff's] pancreas" and performed a

3

gastrointestinal endoscopy.  (Tr. 210-11.)  The exam revealed multiple cystic lesions in Castellano's pancreas head and single cysts in her pancreas body and tail.  (Tr. 138-42.)  Dr. Noyer opined that these cysts were the result of duodenal Crohn's disease.  (Tr. 208-09.)  By October 2004, additional testing revealed that the pancreatic cysts had grown in size and number, suggesting chronic pancreatitis.  (Tr. 187-91, 193.)  Consequently, in January 2005, Castellano underwent a Whipple surgical procedure to remove portions of her pancreas and small intestine.[3]  (Tr. 172-73, 240-41.)

Castellano filed her SSDI application soon after the surgery.  At the Commissioner's request, Dr. Vladimir Slutsker performed a consultative examination in April 2005.  (Tr. 147-50.)  Dr. Slutsker found Castellano "in no acute distress," and concluded the "physical examination was normal."  (Tr. 148, 150.)  Due to her medical history, however, Dr. Slutsker described Castellano's prognosis as "guarded" and opined that she "may encounter difficulty to [sic] various activities involving moderate exertion or greater due to her pancreatitis and chronic fatigue."  (Tr. 150.)  An agency medical consultant subsequently assessed Castellano's exertional limitations after reviewing her

---

[3] The Whipple procedure (pancreatoduodenectomy) entails removal of the duodenum (part of the small intestine), a portion of the stomach and the head of the pancreas.  The operation is commonly performed to treat cancers or other severe disorders of these structures.  See Dorland's Illustrated Medical Dictionary 1510 (31st ed. 2007).

medical records and found she was limited in her exertional ca-
pacity by "chronic low back pain due to pancreatitis." (Tr.
152-56.)  After a detailed recitation of Castellano's reports of
pain, the examiner concluded "[b]ased upon the totality of the
evidence in the file, the [claimant's] statements of functional
limitations are found to be partially credible." (Tr. 155.)

Despite a post-surgical CT scan showing no evidence of on-
going pancreatitis (Tr. 200-01), Castellano continued to report
abdominal and back pain throughout 2005, leading her surgeon to
question whether "these symptoms are related to her pancreas or
to her surgery" (Tr. 240-41).  Further testing in October re-
vealed fibrosis and calcification of the pancreas, along with
multiple, small cysts requiring continued "surveillance of
[Plaintiff's] residual pancreas." (Tr. 194-97, 226.)  Castel-
lano remained under the care of Dr. O'Neill throughout 2006.  By
October of that year, the doctor's assessment was chronic pan-
creatitis, gastroesophageal reflux disease and anxiety disorder,
each managed by separate prescription medications including nar-
cotic pain relievers. (Tr. 197, 286-93, 297-304.)

The ALJ's denial of Castellano's SSDI application issued
the following month, in November 2006. (Tr. 14-20.)

**B. Evidence of Pain**

Between March 2003 and November 2006, Castellano continually reported both chronic and acute episodic pain in her lower back and abdomen. (See Tr. 62-63, 76, 96, 98, 147, 150, 152, 154-55, 195, 197-98, 210, 219, 226, 231, 240, 242, 286-93.) Castellano's examining and treating physicians all acknowledge these complaints in medical reports appearing in the administrative record. (See Tr. 143, 147, 150, 195, 197-98, 210, 219, 226, 231, 240, 242, 286, 288-93.) Subject to lapses in her health coverage, Castellano consistently sought treatment for her pain, adhered to the regimen prescribed, and sought periodic adjustments in her care in order to obtain better results. (Tr. 173, 220, 224, 228, 242, 286-93, 297, 299, 302, 305, 307.) Castellano was at least twice referred to pain management specialists between 2003 and 2006. In May 2003, she was seen by Dr. Sathish Modugu, who assessed chronic abdominal pain, prescribed Ultracet (tramadol) as needed and provided Castellano with several days' supply of Vicodin (hydrocodone). (Tr. 242.) In September 2005, Castellano was referred to Dr. Francis Agbonkpolo who, on at least eight separate occasions between September 2005 and September 2006, prescribed various strengths of Percocet (oxycodone) and Dilaudid (hydromorphone), to be taken as needed up to four times every day. (Tr. 286-93.) Each of these four medications is a potent, narcotic painkiller indicated for re-

6

lief from moderate to moderately severe pain.  See Physicians'
Desk Reference 419-22, 510-11, 1125-28, 2366-70 (62nd ed. 2008).
For much of the disability period, and especially after her
Whipple surgery, Castellano was receiving at least one of these
medications on a regular basis while under the supervision of
her doctors.  (See Tr. 173, 220, 224, 228, 242, 286-93, 297,
299, 302, 305, 307.)

   Several physicians have noted the relationship between Cas-
tellano's subjective reports of pain and her pancreatitis.  For
example, in 2003, Castellano's first pain management specialist
assessed "chronic abdominal pain associated with a probable pan-
creatic cyst."  (Tr. 242.)  The agency's examining physician
noted in April 2005 that Castellano "has suffered from low back
pain for almost two years.  She was told that this back pain is
arising from her pancreatitis."  (Tr. 147.)  Shortly thereafter,
the agency's medical consultant added that Castellano "suffers
from . . . chronic low back pain due to pancreatitis."[4]  (Tr.
152.)  In August 2005, the surgeon who performed the Whipple
procedure explained that Castellano "continues to have abdominal
and back pain" that may be related to her pancreatitis. (Tr.
240.)  Castellano's second pain management specialist, Dr. Ag-

---

[4] On a follow up examination following her Whipple operation, Castel-
lano's gastroenterologist found evidence of chronic pancreatitis, but noted
"the source of her abdominal pain seems somewhat elusive as her symptoms are
not characteristic of pancreatic type pain.  That is, her pain is not con-
stant and boring."  (Tr. 226.)

bonkpolo described her symptoms as "pancreatic pain" in his treatment notes. (Tr. 286.) These statements are consistent with the general understanding within the medical community that chronic pancreatitis may cause both acute and chronic pain.[5] (Tr. 19.)

### C. Other Evidence

At her administrative hearing, Castellano testified that she has a partial college education and that her prior employment includes travel planning and retail sales. (Tr. 67, 341-49.) Her work as a travel agent was essentially sedentary (Tr. 73; Pl. Mem. 3), while her retail work required standing much of the day and lifting objects weighing between ten and twenty-five pounds (Tr. 74, 346; Pl. Mem. 3). Castellano was last regularly employed in March 2003. (Tr. 63.)

Castellano informed the ALJ that she has difficulty walking for more than an hour or two and cannot sit for extended periods. (Tr. 360.) She has difficulty sleeping and experiences increasingly frequent episodes of abdominal and back pain. (Tr.

---

[5] Patients with chronic pancreatitis "present with episodic abdominal pain [that is] epigastric, severe, and may last many hours or several days." The Merck Manual of Diagnosis and Therapy 132 (18th ed. 2006). "Too often, [dietary] measures do not relieve pain, requiring increased amounts of opioids, with the threat of addiction. Medical treatment of chronic pancreatic pain is often unsatisfactory." Id. at 133. Some complications, including pancreatic cysts, can lead to chronic pain; surgical procedures such as the Whipple may relieve this pain "in about 70 to 80 percent of patients." Id.

350, 353-54.) As a result, the intensity and duration of Castellano's daily activities vary with the degree of pain she is experiencing. (Tr. 78, 359-60; Pl. Mem. 4.) These activities include household chores such as laundry and grocery shopping. On "a good day," she may also surf the Internet, run local errands by car or attend group support sessions. (Tr. 340, 353-57, 360.) Castellano also walks and cares for her dog (Tr. 78, 80, 355), and occasionally pursues such hobbies as reading, traveling and gardening (Tr. 81).

**DISCUSSION**

Before addressing the merits of the parties' cross motions, we summarize the legal standards applicable to SSDI claims and review the ALJ's opinion in detail.

**A. Statutory and Regulatory Framework**

    **1. Five-Step Analysis**

Social Security regulations establish a five-step analysis to determine whether a claimant is eligible for SSDI benefits. See 20 C.F.R. § 404.1520(a)(4); see also Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam). First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity, defined as work involving "significant physical or mental activities . . . [done] for pay or

profit." 20 C.F.R. § 404.1572. A finding of such activity is a threshold disqualification for SSDI benefits. Otherwise, the Commissioner next considers whether the claimant has a "severe impairment" significantly limiting her physical or mental ability to perform basic work activities and expected to last at least 12 months. If the claimant is so impaired, the third step requires the Commissioner to determine, based solely on the medical evidence, whether the step two impairment meets or equals any of those listed in 20 C.F.R. § 404, Subpt. P, App. 1 ("Appendix 1"). If so, disability is presumed and the claimant is deemed unable to perform any substantial gainful activity. Otherwise, the Commissioner proceeds to the fourth step to determine whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work.

Before this determination can be made, the Commissioner must assess the claimant's RFC, defined as the most an individual can still do, considering the effects of physical and mental limitations on her ability to perform work-related tasks.[6]  20 C.F.R. § 404.1545. In undertaking an RFC analysis, the Commissioner may consider "all of the relevant medical and other evidence," including the claimant's daily activities and opinion evidence concerning her limitations and symptoms such as pain.

---

[6] Relevant physical capabilities include sitting, standing, walking, lifting, carrying, handling objects, hearing, speaking and traveling. 20 C.F.R. § 404.1513(c)(1).

10

20 C.F.R. §§ 404.1512(b), 404.1545(a)(3).  The Commissioner may consider the limiting effect of subjective pain only insofar as it can reasonably be accepted as consistent with the objective evidence.   20 C.F.R. § 404.1529(c)(4).    Statements about pain and other symptoms are not conclusive evidence of disability unless accompanied by medical evidence indicating an impairment that could reasonably be expected to produce the symptoms.   20 C.F.R. § 404.1529(a).

At the fourth step, the exertional demands of the claim-ant's previous work are drawn from her description of that work, expert testimony of vocational experts and the Department of La-bor's  Dictionary of Occupational Titles.[7]    20 C.F.R. § 404.1560(b)(2).  If the claimant is unable to perform her pre-vious work given her RFC, the fifth and final step requires the Commissioner to determine whether there is other work in the na-tional economy the claimant is able to perform, considering her limitations and such vocational factors as education, age and work experience.   This determination ordinarily may be made by resorting to medical vocational guidelines, commonly called "the grids."[8]   See Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir. 1986); see also 20 C.F.R. Pt. 404, Subpt. P, App. 2.

---

[7] U.S. Department of Labor, Dictionary of Occupational Titles (4th ed. 1991).

[8] Where a claimant is so incapacitated that she cannot perform "a full range of sedentary work," mechanical application of the grids, which presume

11

## 2. Standards of Review

The scope of judicial review under the Social Security Act is limited to determining whether the Commissioner's final decision is based upon the correct legal standard and supported by substantial evidence, "keeping in mind that it is up to the agency, and not this court, to weigh the conflicting evidence in the record." Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998); see 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.") The Court may affirm, modify or reverse the Commissioner's decision with or without remanding the cause for a hearing. 42 U.S.C. § 405(g).

## B. The ALJ's Findings

ALJ Edgell determined at steps one and two that Castellano was not engaged in substantial gainful activity and that she suffered from three severe impairments: acinar cell cystadenoma of the pancreas, status-post Whipple procedure and a history of Crohn's disease. (Tr. 18.) At step three, however, the ALJ found Castellano's impairments were neither listed in Appendix 1 nor medically equivalent to any impairment that would automati-

---

such capacity at a minimum, is inappropriate. See Nelson v. Bowen, 882 F.2d 45, 46 (2d Cir. 1989).

12

cally qualify Castellano for disability benefits.   (Tr. 18); see
20 C.F.R. § 404, Subpt. P, App. 1.

The ALJ then proceeded to step four to determine whether
Castellano was able to perform her past relevant work as a cor-
porate travel agent or retail salesperson.   Here, the ALJ intro-
duced the analysis with her conclusion that, "claimant has the
residual functional capacity to perform light work."   (Tr. 18);
see 20 C.F.R. 404.1567(b).   This finding was then described as
"generally consistent" with the relevant medical evidence, in-
cluding Dr. Slutsker's "normal" findings and Dr. O'Neill's
"[e]ssentially normal findings" following comprehensive physical
examinations of Castellano in April and December 2005, respec-
tively.   (Tr. 18, citing Tr. 147-50, 220-25.)

The ALJ then considered Castellano's reports of her own
symptoms and the extent to which they could reasonably be recon-
ciled with the objective medical evidence.   (Tr. 18, citing 20
C.F.R. § 404.1529; S.S.R. 96-4p and 96-7p (1996)).[9]   The ALJ con-
cluded that Castellano's pancreatitis could reasonably be ex-
pected to cause "abdominal pain with episodic flare-ups," but
did not specifically mention her reports of chronic pain, par-
ticularly in her lower back.   Castellano's statements concerning
the intensity, persistence and limiting effects of her acute

---

[9] A Social Security Ruling ("S.S.R.") is an opinion published under the authority of the Commissioner of Social Security and is binding on all compo-nents of the Social Security Administration.   See 20 C.F.R. § 402.35(b)(1).

pain were deemed "not credible to the extent purported." (Tr. 19.) Noting that the treatment records of Dr. O'Neill and her second pain management specialist "do not document flare-ups occurring at a frequency which would be preclusive of substantial gainful activity" (Tr. 19, citing Tr. 220-39, 243-78, 286-93.), the ALJ stated that "[n]o treating or examining physician has opined that claimant is totally, or even partially disabled."[10] (Tr. 19.) Castellano was also found to be "quite independent . . . able to live by herself, [] drive an automobile[,] cook, clean and shop for herself" and the ALJ found such an activity level "inconsistent with contentions of total disability." (Tr. 19.)

Citing Castellano's description and the Dictionary of Occupational Titles, the ALJ noted that the tasks required of her previous employment did not exceed the parameters for "light work." (Tr. 19.) Because the exertional demands of Castellano's prior work did not exceed her assessed limitations, the ALJ determined she was not disabled under the Act and did not proceed to step five of the SSDI analysis. (Tr. 19.)

---

[10] Apparently and not inappropriately, the ALJ gave no weight to an outdated disability statement provided by Castellano's insurance carrier and completed by Dr. O'Neill in June 2003, well before her surgery for pancreatitis.

14

## C.  Review of the ALJ's Findings

Castellano challenges the ALJ's step four determination of her ability to perform her past relevant work on two grounds. First, she contends that the ALJ erred by failing to offer affirmative evidence in support of the finding that she retained the residual functional capacity to perform "light work."  Second, she contends that the ALJ improperly disregarded her subjective reports of pain, which were corroborated by objective evidence of a medical impairment that could reasonably be expected to cause the pain.  We address each claim seriatim.

### 1.  Residual Functional Capacity

Castellano contends that the ALJ's assessment of her residual functional capacity was flawed because it was not supported by positive evidence in the record.  (Pl. Mem. 5, 7-8.)  While Castellano's brief is not well developed on this point, she appears to suggest the ALJ had an affirmative duty to introduce evidence of her ability to perform her prior work and could not simply rely on the absence of contrary evidence.  As a procedural matter, this argument is without merit.

In this case, the ALJ rested her determination that Castellano could perform light work on: (i) Dr. Slutsker's "normal" findings and Dr. O'Neill's "[e]ssentially normal findings" following comprehensive physical examinations in 2005 (Tr. 18-19,

citing Tr. 147-50, 220-25.); (ii) Castellano's testimony con-
cerning her daily activities (see Tr. 353-57, 360); (iii) her
conclusion that Castellano's subjective complaints of pain were
"not credible to the extent purported" (Tr. 19); and (iv) the
absence in the record of any medical opinion that Castellano was
wholly or partially disabled.

Given our conclusion infra that the matter should be re-
manded for further consideration of Castellano's symptoms and
course of treatment, we express no opinion on whether the ALJ's
determination of residual functional capacity would pass muster
under substantial evidence review. It is noteworthy, however,
that the record is lacking the customary residual functional ca-
pacity assessment from Castellano's several treating physicians.

Nonetheless, it is well established that the claimant bears
the burden of proof at steps one through four of the disability
evaluation process. See, e.g., Berry, 675 F.2d at 467. Thus,
the ALJ has no obligation to introduce evidence of the claim-
ant's capacity to perform her past relevant work, beyond what is
necessary to complete the record.[11] See, e.g., Perez v. Barn-

---

[11] We note that neither party contends that the medical record in incom-
plete. While the claimant is responsible for providing the evidence neces-
sary to establish her RFC, the ALJ must first develop a complete medical his-
tory, 20 C.F.R. § 404.1545(a)(3) (citing 20 C.F.R. § 404.1512(c)), which in-
cludes all records of the plaintiff's medical sources covering at least the
twelve months preceding the month in which the SSDI application is filed. 20
C.F.R. § 404.1512(c)(2). Where a claimant is represented by counsel, as Cas-
tellano was here, the ALJ is under no heightened duty to develop the record.
Compare Echevarria v. Sec'y of Health & Human Servs., 685 F.2d 751 (2d Cir.
1982) ("Where . . . the claimant is unrepresented by counsel, the ALJ is un-

hart, 234 F. Supp. 2d 336, 340-41 (S.D.N.Y. 2002) (rejecting the argument that "the ALJ erred in pointing to no affirmative evidence proving Plaintiff's ability to perform each of the physical requirements of exertionally light work."); see also Diaz v. Shalala, 59 F.3d 307, 315 (2d Cir. 1995). The authority cited by Castellano for the contrary proposition is inapposite because it describes the scope of the ALJ's duty to determine the claimant's functional capacity at the fifth and final step, where the Commissioner bears the burden of proof.[12]   See Sobelewski v. Apfel, 985 F. Supp. 300, 314 (E.D.N.Y. 1996) (step five determination); Davis v. Shalala, 883 F. Supp. 828, 837 (E.D.N.Y. 1995) (same); see also Perez, 234 F. Supp. 2d. at 340-41 (distinguishing Sobelewski and Davis).

While, as we have concluded, there is no basis to require the ALJ to ensure the record contains RFC assessments from treating physicians, particularly when the claimant is represented by counsel, a record on remand that includes this infor-

---

der a heightened duty to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.") (internal quotation omitted), with Hucci v. Apfel, No. 98 Civ. 2372, 1999 WL 553787 at *5 n.5 (S.D.N.Y. July 29, 1999) ("No such 'heightened duty' existed here as [the clamant] was represented by counsel.")

[12] We note parenthetically that even if Castellano demonstrates she cannot perform her past work, she still may not be found disabled under the Act. At step five, the Commissioner may ordinarily resort to medical vocational guidelines, commonly called "the grids," to determine whether there is other work in the national economy a claimant is able to perform. If Castellano retains the RFC to perform at least sedentary work (the lowest classification short of total disability), her age, education and transferable skill set would compel the conclusion that she is not disabled. See 70 C.F.R. Pt. 404, Supp. P, App. 2, Rule 201.22.

mation would lend considerable support to any conclusion reached by the ALJ after further administrative proceedings.

## 2. Subjective Reports of Pain

Castellano also asserts that the ALJ was obligated, as a matter of law, to fully credit her complaints of debilitating pain because they were substantiated in part by objective medical evidence. (Pl. Mem. 5-6.) In the alternative, she argues that the ALJ's conclusion concerning the credibility of her subjective reports of pain was not supported by substantial evidence in the record. (Pl. Mem. 6.) While we disagree that the ALJ was constrained to rule in Castellano's favor simply because her pain was related to a medically determinable impairment, remand is nonetheless appropriate because the ALJ has not explicitly set forth the rationale for disregarding evidence of Castellano's most debilitating symptoms.

While it is true that subjective complaints of pain supported by objective medical evidence must be considered, see, e.g., Simmons v. U.S. R.R. Retirement Bd., 982 F.2d 49, 52 (2d Cir. 1992), the ALJ was not required to blindly accept Castellano's reports of the severity and extent of her pain. The ALJ ultimately exercises broad discretion to "arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant."

18

Perez, 234 F. Supp. 2d at 340-41 (quoting Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979)).

However, an ALJ's discretion in this regard must be guided by several procedural requirements. In making her credibility determination, the ALJ is instructed to take into account several evaluative factors including daily activities, medication, treatment and causes of the pain, in order to determine the extent to which pain contributes to the severity of the claimant's impairment. See 20 C.F.R. § 404.1529(c)(3)(i)-(iv); Morganstein v. Chater, 111 F.3d 123 (2d Cir. 1997); Miller v. Astrue, 538 F. Supp. 2d 641, 652-53 (S.D.N.Y. 2008). Moreover, the ALJ's reasons for discounting a claimant's subjective complaints must be set forth with "sufficient specificity to enable [the district court] to decide whether the determination is supported by substantial evidence." McClain v. Barnhart, 299 F. Supp. 2d 309, 323-24 (S.D.N.Y. 2001) (quoting Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)).

In this case, the ALJ's decision sidesteps two crucial aspects of Castellano's complaints, namely the documented reports of her chronic back pain and the long history of her pain treatment detailed in the record. In addressing Castellano's subjective reports of pain, the ALJ simply notes:

> Although the objective evidence does chronicle a pancreatic disorder which could produce abdominal pain with reported episodic flare-ups,

19

> the treatment records of Drs. O'Neill and Agbonk-
> polo . . . do not document flare-ups occurring at
> a frequency which would be preclusive of gainful
> activity.

(Tr. 19.)   The treatment notes of Drs. O'Neill, Modugu and Ag-

bonkpolo, however, all indicate that Castellano suffers from

both episodic pain and chronic pain (Tr. 197, 220-29, 237-39,

242-62, 286-293, 297-308), the latter being the cause of Castel-

lano's inability to sit for extended periods of time (Tr. 360-

61).   Indeed, even the agency's medical consultant and consulta-

tive examiner noted Castellano's reports of chronic lower back

pain "arising from" her pancreatitis.   (Tr. 147, 152.)   It is

unclear whether the ALJ dismissed the chronic pain as unsup-

ported by objective medical evidence, discredited Castellano's

testimony in this regard, or simply ignored the symptom alto-

gether.   Since Castellano challenges the ALJ's decision for her

apparent failure to consider the evidence concerning her chronic

back pain (Pl. Mem. 7), and the basis for the ALJ doing so is

unclear, we remand for detailed findings on this issue.

Moreover, it is not apparent that the ALJ considered the

type, dosage and effectiveness of Castellano's pain medications

and the extent to which her treatment regimen has evolved over

time.   (Tr. 19.)   Castellano was at least twice referred to pain

management specialists and, while in their care, was prescribed

a variety of pain medications, including Ultracet (tramadol),

20

Vicodin (hydrocodone), Dilaudid (hydromorphone) and Percocet (oxycodone). (Tr. 197, 220, 224, 228-29, 242, 286-93.) As we noted *supra*, these medications are indicated for patients experiencing moderate to moderately severe pain and, due to the high risk of dependency and abuse, they are administered in the smallest effective dose. And yet, Castellano's physicians prescribed these potent painkillers on a continuing basis for much of the disability period. We find it surprising, to say the least, that the ALJ's decision omits any discussion of Castellano's course of pain management or of its probative value. See, e.g., Tornatore v. Barnhart, No. 05 Civ. 6858, 2006 WL 3714649, at *6 (S.D.N.Y. Dec. 12, 2006) (remanding for further consideration of the claimant's symptoms in light of the type of pain medication being prescribed); Molina v. Barnhart, No. 04 Civ. 3201, 2005 WL 2035959, at *9 (S.D.N.Y. Aug. 17, 2005) (same); Crespo v. Barnhart, 293 F. Supp. 2d 321, 325 (S.D.N.Y. 2003) (same).[13]

---

[13] Social Security Ruling 96-7p provides, in relevant part:

> In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense and persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements. Persistent attempts by the individual to obtain relief of pain or other symptoms, such as by increasing medications, trials of a variety of treatment modalities in an attempt to find one that works or that does not have side effects, referrals to specialists, or changing treatment sources may be a strong indication that the symptoms are a source of distress to the individual and gener-

Accordingly, this matter is remanded for further findings concerning the effect, if any, that Castellano's chronic pain and treatment history had, or would have, on the ALJ's conclusions. See, e.g., Berry, 675 F.2d at 469 (noting that remand for "further findings or a clearer explanation for the decision" is particularly appropriate "where credibility determinations and inference drawing is required of the ALJ"); Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996).

## CONCLUSION

For the foregoing reasons, the parties' respective motions for judgment on the pleadings are DENIED. The matter is remanded to the Commissioner for further proceedings consistent with this opinion. The Clerk of the Court is respectfully requested to close this case on the Court's docket with leave to reopen, if necessary, after the conclusion of administrative proceedings on remand.

**IT IS SO ORDERED.**

Dated:    New York, New York
          July 30, 2008

---

ally lend support to an individual's allegations of intense and persistent symptoms.

1996 WL 374186 at *8.

22

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

23

Copies of the foregoing Memorandum and Order have been mailed on this date to the following:

Counsel for Plaintiff

Lewis B. Insler
80 Grasslands Road
Elmsford, NY  10523-1100

Counsel for Defendants

Susan C. Branagan
United States Attorney's Office
86 Chambers Street, 3rd Floor
New York, NY 10007-2632